**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ELIZABETH M. PATE and
DONALD G. LONG, Pro Se

PLAINTIFFS

                                                                  CIV. 11-289  JCH/CG

V.


MARTIN H. POEL and
JOE M. LAMB, individually

DEFENDANTS


**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on *Defendant Martin H. Poel's Motion to Dismiss the Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and Memorandum in Support*, (Doc. 8), *Defendant Joe M. Lamb's Motion to Dismiss the Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and Memorandum in Support*, (Doc. 10), and Plaintiffs' *Motion to Strike Defendant Poel's Entry of Appearance for the Defendant Lambs' Defense Due to Conflict of Interest as well as the Defendants Motion to Dismiss with Memorandum of Law in Support*, (Doc. 17). Defendants seek to have Plaintiffs' complaint dismissed on the grounds that this Court does not have jurisdiction over this action. (Doc. 8 at 3-4).[1] Plaintiffs did not reply to Defendants' motions, but rather submitted a motion to strike in which they claim that Defendant Poel's representation of Defendant Lamb is improper and that the Court does have subject matter jurisdiction over the parties' dispute. (Doc. 17). Having

---

[1] While the Defendants have submitted their motions to dismiss separately, the motions are identical. (*Compare* Doc. 8 and Doc. 10). Therefore, for ease of review, the Court will refer exclusively to Defendant Poel's motion, (Doc. 8).

considered the parties' motions, the relevant law, and otherwise being fully advised in the premises, the Court **RECOMMENDS** that Defendants' motions be **GRANTED** and that Plaintiff's *Complaint*, (Doc. 1), be **DISMISSED WITHOUT PREJUDICE**.

I.       Background

Plaintiffs' complaint arises out of a dispute concerning real property in Las Cruces, New Mexico. Plaintiffs claim that between May, 2007, and November, 2010, the Plaintiffs had a "continuing legal verbal and written contractual/agreement" to purchase a house located at 974 Weinreich Road from the owner, Leona Harrison. (Doc. 1 at 3). Plaintiffs claim they had an agreement with Mrs. Harrison to pay $20,000.00 down for the house and then pay Mrs. Harrison a lump sum of $100,000.00 when Plaintiff Long received an expected legal settlement. (*Id.* at 5). Plaintiffs did not have $20,000.00 on hand, so Mrs. Harrison rented the house to Plaintiff Long for $350.00 a month. (*Id.* at 6, 14). The rental agreement stated that Plaintiffs were "renting with the intention to buy." (*Id.* at 14). The Plaintiffs believed that the $350.00 monthly payments were being considered payments towards the $20,000.00 deposit. (*Id.* at 5-6). Defendants claim that Plaintiffs unilaterally altered the rental agreement to include the "renting with intention to buy" language and that Ms. Harrison never had any intention of selling the house. (Doc. 18 at 3).

After renting the house from Mrs. Harrison, Plaintiffs apparently sublet the house to Defendant Lamb until Mr. Lamb found a new job and a place of his own. (Doc. 1 at 3; Doc. 18 at 3). In May of 2010, Plaintiff Long tired of Mr. Lamb's presence at the Weinreich property and and he filed a *pro se* Petition for Restitution against Mr. Lamb in New Mexico Magistrate Court. (Doc. 8 at 2; Doc. 8-1 at 1). Mr. Long claimed that Mr. Lamb had verbally agreed to be responsible for a portion of the monthly rent and that Mr. Lamb had not paid

the rent since January of 2009. (Doc. 8-1 at 1, 5). Mr. Long sought over $3,000 in unpaid

rent. (*Id.*). Mr. Lamb was represented by Martin Poel, a New Mexico attorney who does pro

bono work with New Mexico Legal Aid. (*Id.* at 11). Mr. Long eventually dismissed his case

against Mr. Lamb, claiming that the parties had resolved the dispute. (*Id.* at 3-9). Shortly

thereafter, Elizabeth Pate - Mr. Long's girlfriend - instituted a similar action against Mr.

Lamb, requesting over $5,000 in unpaid rent and seeking to have Mr. Lamb evicted from

the Weinreich property. (*Id.* at 10). Mr. Lamb was again represented by Mr. Poel, and the

New Mexico Magistrate Judge ultimately ruled for Mr. Lamb on November 2, 2010. (*Id.* at

11-12). While the Magistrate Judge ruled for Mr. Lamb on the question of restitution, he did

order that the property be restored to the Plaintiffs. (*Id.* at 12). Plaintiffs then filed a "motion

to void" the Magistrate Judge's judgment. (Doc. 8-1 at 13-18). In support of the motion to

void, Plaintiffs reiterated their claim for past due rent, and they further claimed that Mr.

Lamb had forged Mr. Long's name onto a rent receipt and presented it as evidence at the

November 2 hearing. (*Id.* at 15). Plaintiffs claimed that Mr. Poel was aware that the rent

receipt had been forged and that he nevertheless conspired with Mr. Lamb to introduce it

as evidence before the Magistrate Judge. (*Id.*) The Judge denied the motion and Plaintiffs

have now brought the instant suit. (*Id.* at 19).

Plaintiffs maintain that Mr. Lamb has tried to influence Leona Harrison into breaking

the agreement she had with the Plaintiffs to sell the Weinreich property. (Doc. 1 at 2-3). Mr.

Poel purportedly aided Mr. Lamb's effort to interfere with Mrs. Harrison by telling Mr. Long

that he thought that there "were flaws" with the rental agreement between Mr. Long and

Mrs. Harrison. (*Id.* at 7). Plaintiffs believe that Mr. Poel and Mr. Lamb "conspired together

to wreck the business deal that the Plaintiffs had with Leona Harrison." (*Id.*). Plaintiffs

3

believe that Mr. Poel's bad intentions are supported by the fact that he knowingly helped

Mr. Lamb introduce the forged rent receipt into evidence and that he slandered them in

state court by saying that Mr. Long was, among other things, a violent man. (*Id.* at 8-9).

Plaintiffs have identified four causes of action against Mr. Poel and Mr. Lamb: (1) "Tortuous

[sic] Interference with Contractual Relations . . ."; (2) "Tortuous [sic] Interference with

Prospective Economic Advantage"; (3) "Liable [sic] and Defamation"; and (4) "Intentional

Infliction of Emotional Distress." (*Id.* at 3, 6-11). Plaintiffs state that they are bringing their

claims under 42 U.S.C. § 1983 and 42 U.S.C. §§ 1985(2)-(3). (*Id.* at 1, 6; Doc. 2 at 1).[2]

In lieu of a response, Defendants have moved to dismiss the complaint for lack of

subject matter jurisdiction. (Doc. 8; Doc. 10). They claim that the complaint does not satisfy

the requirements for either diversity jurisdiction or federal question jurisdiction.

## II.     Standards of Review

In moving to dismiss the complaint for lack of subject matter jurisdiction, Defendants

have cited to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 8 at 1). A motion

to dismiss under Rule 12(b)(6) is made when a defendant contends that the complaint has

failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion

to dismiss for lack of subject matter jurisdiction, however, should be brought under Rule

12(b)(1). *Robinson v. Union Pacific R.R.*, 245 F.3d 1188, 1191 (10th Cir. 2001) ("When the

motion to dismiss is grounded on lack of subject matter jurisdiction . . . the motion must be

---

[2] Plaintiffs also claim that they are bringing claims under 42 U.S.C. § 1983(3). (Doc. 1 at 1, 6). However, 42 U.S.C. § 1983 does not have any subsections and it seems clear that Plaintiffs intended to cite to 42 U.S.C. § 1985(3). (*See, e.g.*, Doc. 2 at 5 (citing to Section 1983(3) and then quoting the text of 42 U.S.C. 1985(3)). The Court will disregard Plaintiffs' references to 42 U.S.C. § 1983(3).

brought under Rule 12(b)(1) [rather than Rule 12(b)(6) or Rule 56]"). Notwithstanding

Defendants' error, federal courts  must determine for themselves whether they possess

subject matter jurisdiction over a case. FED. R. CIV. P. 12(h)(3); *State Farm Mut. Auto. Ins.*

*Co. v. Narvaez*, 149 F.3d 1269, 1270-71 (10th Cir. 1998). Therefore, the Court will review

whether the Court has subject matter jurisdiction over this case using the familiar standard

elucidated under Rule 12(b)(1).

A complaint may be dismissed pursuant to Rule 12(b)(1) if the court lacks subject

matter jurisdiction. FED. R. CIV. P. 12(b)(1). Under a Rule 12(b)(1) motion, the moving

party may either 1) facially attack the complaint's allegations as to the existence of subject

matter jurisdiction or 2) go beyond the allegations contained in the complaint by presenting

evidence to challenged the factual basis upon which subject matter jurisdiction exists.

*Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). In reviewing a

facial attack, the Court construes plaintiff's pleading liberally, accepts all uncontroverted,

well-pleaded factual allegations as true, and views all reasonable inferences in plaintiff's

favor. See *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). When

reviewing a factual attack on subject matter jurisdiction, a district court may not presume

the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000,

1003 (10th Cir.1995) (citation omitted). "A court has wide discretion to allow affidavits, other

documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under

Rule 12(b)(1)." *Id.* (citations omitted). "In such instances, a court's reference to evidence

outside the pleadings does not convert the motion to a Rule 56 motion." *Id.* (citation

omitted).

Because Plaintiffs are proceeding *pro se*, the Court must construe the complaint

liberally under the standards outlined above. *Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992). However, a court should dismiss a *pro se* plaintiff's claims that are supported only by vague and conclusory allegations. *Id.*

## III.      Analysis

Plaintiffs claim that this Court has jurisdiction over this action because the parties are diverse pursuant to 28 U.S.C. § 1332. (Doc. 1 at 1). Plaintiffs additionally claim that this case implicates federal question jurisdiction because the Plaintiffs are seeking relief under 42 U.S.C. § 1983 and 42 U.S.C. §§ 1985(2), (3). Defendants contend that the complaint fails to establish a basis for this Court to exercise diversity jurisdiction or federal question jurisdiction over this case and that the Complaint must be dismissed. (Doc. 8 at 1). The Court will therefore address both jurisdictional grounds in turn.

### i.      Diversity Jurisdiction

As stated above, Plaintiffs assert that this Court has jurisdiction over their case because the parties are diverse. (Doc. 1 at 1). Pursuant to 28 U.S.C. § 1332(a)(1), "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states." As a threshold matter, the party who invokes federal jurisdiction bears the burden of establishing jurisdiction by a preponderance of the evidence. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995)*.* Thus, the complaint must allege that the plaintiff and defendant are citizens of different states and that the amount in controversy is greater than $75,000. 28 U.S.C. § 1332(a). "Both the requisite amount in controversy and the existence of diversity must be affirmatively established on the face of either the petition or the removal notice." *Id.* "Where the pleadings are inadequate, we may review the record

6

to find evidence that diversity exists." *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993). A presumption against federal jurisdiction exists because the federal courts are courts of limited jurisdiction. *See Penteco Corp. Ltd. Partnership-1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

Plaintiffs have not established that the parties are citizens of different states, as is required under 28 U.S.C. § 1332(a)(1). The complaint does not state whether the parties are citizens of different states.  The complaint simply states that the Plaintiffs reside in New Mexico and that Defendant Lamb "can be located [at] 601 E. Hayes in Morton, Texas, Cochran County 79346." (Doc. 1 at 2). With regard to Mr. Poel, the complaint merely states that he is associated with New Mexico Legal Aid, and that Legal Aid's principal place of business is in Las Cruces, New Mexico. Defendants have each submitted affidavits stating that they both reside in and are citizens of New Mexico. (Doc. 8-1 at 22). Based on the Defendants' affidavits, it does not appear that the parties are diverse. Even if the Court were to accept Plaintiffs' assertion that Mr. Lamb is a citizen of Texas, Plaintiffs' claim would still fail because they have never asserted that Mr. Poel is a citizen of any state other than New Mexico. For the Court to have diversity jurisdiction over the dispute, the citizenship of *all* defendants must be different than the citizenship of all plaintiffs. *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). Therefore, the Court finds that it lacks subject matter jurisdiction pursuant 28 U.S.C. § 1332.

## ii.    Federal Question Jurisdiction

Plaintiffs' complaint states that this Court has jurisdiction over the parties' dispute pursuant to federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Doc. 1 at 1). In

support thereof, Plaintiffs have asserted federal claims under 42 U.S.C. § 1983 and §§ 1985(2), (3). (*Id.*). Defendants argue that the facts pled in the complaint do not support a claim under either statute and that the complaint does not raise a substantial federal question. (Doc. 8 at 5-7).

28 U.S.C. § 1331 provides that federal district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. "Under 28 U.S.C. § 1331, federal question jurisdiction must appear on the face of a plaintiff's well-pleaded complaint." *Martinez v. U.S. Olympic Committee*, 802 F.2d 1275, 1280 (10th Cir. 1986). The complaint must identify the statute or constitutional provision under which the claim arises as well as allege sufficient facts to show that the case does, in fact, arise under federal law. *Id.* Even where the complaint alleges that there is federal question jurisdiction, the suit will be dismissed for lack of jurisdiction "when the claim is too insubstantial for consideration or is wholly insubstantial and frivolous." *Id.* (internal quotations and citations omitted).

### a.    Plaintiffs' § 1983 Claims

With regard to Plaintiffs' § 1983 claims, the Court finds that Plaintiffs have failed to establish a basis for federal question jurisdiction because they have not adequately alleged that Mr. Lamb or Mr. Poel were acting "under color" of state law. "To state a claim under § 1983, Plaintiffs must allege that they were deprived of a right "secured by the Constitution and laws" of the United States and that this deprivation was committed under color of state law." *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1207 (10th Cir. 2005); *Olsen v. Aebersold*, 71 F.App'x 7, 9-10 (10th Cir. 2003).

The complaint does not allege that Mr. Lamb or Mr. Poel are state actors. Plaintiffs

concede that neither Mr. Lamb nor Mr. Poel are state actors as Plaintiffs' memorandum of

law refers to the Defendants as "private persons" and "not officials of the state. . ." (Doc.

2 at 8). Rather, Plaintiffs contend that Mr. Lamb and Mr. Poel were acting under color of

state law because they involved a judicial official - the New Mexico Magistrate Judge - in

conspiring to deny Plaintiffs of their civil rights:

> Plaintiffs claims private parties such as the defendants herein, involved in such
> conspiracy, even though not officials of the state can be liable under 1983. Private
> persons, jointly engaged with state officials in prohibited actions are acting under
> color of law for the purpose of the Statute. Additionally, to act "under color" of law
> does not require that the accused be an officer of the State. It is enough that the
> Defendants Martin Poel and Joe Lamb are participants in a joint activity with the
> State or its agents . . .

(*Id.*). The Court is unpersuaded.

It is true that the application of the state action doctrine "has been characterized as

one of the more slippery and troublesome areas of civil rights litigation." *See Gallagher v.

Neil Young Freedom Concert,* 49 F.3d 1442, 1447 (10th Cir. 1995). In an attempt to classify

the types of instances where private action might be attributable to the state, the Tenth

Circuit has described four tests a district court may apply: (1) the nexus test; (2) the

symbiotic-relationship test; (3) the joint-action test; and (4) the public-function test. *Id.*

Regardless of which test the Court employs, the improper conduct must still be attributable

to the State. *Id.* Thus, "[i]n order to establish state action, a plaintiff must demonstrate that

the alleged deprivation of constitutional rights was caused by the exercise of some right or

privilege created by the State or by a rule of conduct imposed by the State or by a person

for whom the State is responsible." *Id.*

Under the nexus test, the Plaintiff must demonstrate a sufficiently close connection

between the challenged action and the government "such that the conduct 'may be fairly

treated as that of the State itself.'" *Id.* at 1448 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). A state may generally be held responsible for private conduct "only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1992)). Under the symbiotic test, the court asks whether the state "'has so far insinuated itself into a position of interdependence' with a private party that 'it must be recognized as a joint participant in the challenged activity.'" *Id.* at 1451. Under the joint action test, courts "examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Johnson v. Rodrigues*, 293 F.3d 1196, 1205 (10th Cir. 2002). Under this test, the key question is whether "both public and private actors share a common, unconstitutional goal." *See Gallagher*, 49 F.3d at 1454. Finally, under the public function test, a private party is a state actor if the state delegates to the private party a function "traditionally exclusively reserved to the State." *Id.* at 1456 (quoting *Jackson*, 419 U.S. at 352). While the various tests examine different criteria, the common requirement amongst them is that the plaintiff must show that the private actors acted in concert with, or with significant aid or encouragement from state actors. The Court finds that Plaintiffs have failed to make such a showing in this case.

The only conduct listed in the complaint which implicates the state concerns the two petitions for restitution filed in New Mexico Magistrate Court. Accepting the allegations in the complaint as true, it appears that Mr. Lamb brought a forged rent receipt to the court and that Mr. Poel presented it to the Magistrate Judge as evidence even though he knew it to be forged. (Doc. 1 at 9; Doc. 2 at 6). Plaintiffs further claim that Mr. Poel "slandered

and defamed" Plaintiffs by questioning whether Plaintiffs were actually married, whether

Plaintiff Long really had medical problems, and by intimating that Mr. Long was a violent

person. (Doc. 1 at 9). There is no suggestion in the complaint that the Magistrate Judge

knew the evidence was supposedly forged, or that the Magistrate Judge encouraged Mr.

Poel's actions.

The only allegation regarding any wrongdoing on behalf of the Magistrate Judge is

found in Plaintiffs' motion to strike, where the Plaintiffs state that,

> Magistrate Judge Kent Wingenorth obstructed justice by denying the Plaintiffs Pate
> and Long their due process and property rights as defined in the Fourteenth
> Amendment right to the Equal Protection of the laws, on behalf and in conspiracy
> with the defendants Martin H. Poel and Joe M. Lamb in violation of 42 U.S.C. subs.
> 1983 and 1985(2) . . ."

(Doc. 17 at 5). The Court does not find this conclusory statement to be sufficient to

establish the existence of a substantial federal question in this case. As stated above, the

party who invokes federal jurisdiction bears the burden of establishing jurisdiction by a

preponderance of the evidence. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

Plaintiffs have not included any evidence in the complaint, the memorandum of law, or even

the motion to strike which supports their conclusory assertion that the Magistrate Judge

was conspiring with Defendants to violate Plaintiffs' civil rights. Both the complaint and the

memorandum of law are replete with factual averments regarding Mr. Lamb and Mr. Poel's

purported improper conduct. (*See, e.g.*, Doc. 1 at 2, 6-10; Doc. 2 at 2, 4-5). Conversely, the

complaint and memorandum never state that the Magistrate Judge was a part of the

"conspiracy," and in fact much of the complaint revolves around the Defendants' attempts

to fool the Magistrate Judge into ruling against the Plaintiffs through improper means. (*See,

e.g.*, Doc. 1 at 9)

11

> The Defendant Joe Lamb forged Plaintiff Donald Long's name on to [sic] a rent receipt . . . [and] Martin Poel submitted [the note] into evidence, *thereby giving the Magistrate Judge false and forged evidence to weigh.*
>
> ********
>
> [Mr. Poel] told the Court that the Defendant Mr. Lamb feels threatened of the Plaintiff Donald Long. *He was basically trying to smoke screen the Judge into thinking that the Plaintiff Donald Long may be violent towards the Defendant Joe Lamb.*

(emphasis added).

Furthermore, the memorandum of law suggests that Plaintiffs do not impute any wrongdoing to the Magistrate Judge or any part of the New Mexico judiciary.

> Plaintiffs moves the Court to take notice that (1) Not the State of New Mexico; (2) Not the State Bar; (3) Not the Magistrate Judge or Court; (4) Not Legal Aid; and (5) Not the State Disciplinary board are being sued here . . . The Defendants Martin H. Poel and Joe M. Lamb each, are being sued together in their individual capacities under Title 42 U.S.C. subsections 1983 and 1985(3) for the "intentional perjury and conspiring" together to end the economic relationship that Plaintiffs had with Mrs. Leona Harrison.

(Doc. 2 at 4). Therefore, the Court finds that, notwithstanding Plaintiffs conclusory statement regarding the Magistrate Judge in the motion to strike, none of the listed conduct can be attributed to the state. *See, e.g. Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge.").

Plaintiffs cite to a number of Supreme Court cases to support their position that defendants can be liable under § 1983 for nominally private conduct, including *Dennis v. Sparks*, 449 U.S. 24 (1980), and *United States v. Price*, 383 U.S. 787 (1966). However, those cases do not support Plaintiffs' position since both cases involved private actors who were clearly acting in concert with state actors. In *Sparks*, the Supreme Court held that private defendants who conspired with a state judge to enter an illegal injunction were acting "under color" of state law  because they wilfully participated in joint action with the

state or its agents. *Sparks*, 449 U.S. at 38. In *Price*, the Court found that private individuals who joined with several Mississippi police officers to murder three African-American men were acting "under color" of state law by virtue of their association with the police officers. *Price*, 383 U.S. at 794.[3] The holding in both cases turned on the fact that government officials - a state judge and several state police officers - had joined in the unconstitutional activity. As stated above, Plaintiff has not shown that any state actor violated their constitutional rights in this case. The allegations of misconduct in the complaint and memorandum are directed solely at Mr. Lamb and Mr. Poel. The Court therefore finds that Plaintiffs have failed to establish the existence of a substantial federal question under 42 U.S.C. § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or harmful.'"). The Court recommends that Defendants' motion to dismiss be granted.

### b.    Plaintiffs' § 1985 Claims

Plaintiffs have asserted claims under 42 U.S.C. § 1985(2) and 1985(3). (Doc. 1 at 1, 6; Doc. 2 at 1, 4). Plaintiffs pleadings are not entirely clear on this point as they cite to the two subsections of section 1985 intermittently. Section 1985(2) is mentioned only cursorily in Plaintiffs' complaint and memorandum of law, but Plaintiffs focus heavily on the elements of a section 1985(2) claim in their motion to strike. (*Compare* Doc. 1 at 1, 6 with Doc. 17 at 5-8). Out of an abundance of caution, the Court will review Plaintiffs' claims

---

[3] In *Price*, the Court was considering whether the private defendants acted under color of state law under 18 U.S.C. § 242, which makes it a crime to deprive a person of their constitutional civil rights. The difference is immaterial since "under color" of state law means the same thing under both 18 U.S.C. § 242 and 42 U.S.C. § 1983. *Price,* 383 U.S. at 794 n. 7.

under both sections.

## Claims Under § 1985(3)

Plaintiffs claim that Mr. Lamb and Mr. Poel conspired together to convince Mrs. Harrison to break the lease purchase agreement she had with the Plaintiffs and that this conspiracy violated their rights under 42 U.S.C. § 1985(3). (*See, e.g.* Doc. 1 at 6; Doc. 2 at 4). Section 1985(3) allows for an action for damages if  "[i]f two or more persons . . . conspire . . . for the purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . [or] cause to be done, any act in furtherance of the object of such conspiracy . . .." 42 U.S.C. § 1985(3). Defendants assert that Plaintiffs have failed to state a claim for relief under section 1985(3). (Doc. 8 at 6-7). The Court agrees.

Federal case law has established four essential elements for a section 1985(3) claim. Plaintiffs must show "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (*citing Griffin v. Breckenridge*, 408 U.S. 88, 102-03 (1971)). These elements have been refined and the Supreme Court has held that section 1985(3) "does not "apply to all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* (quoting *Griffin*, 408 U.S. at 101-102). The Supreme Court has narrowly construed the "class-based animus" language and has held that it does not reach conspiracies motivated by an economic or commercial bias. *United Bhd. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 837 (1983). In keeping with

this holding, the Court has held that private conspiracies only violate section 1985(3) if the conspiracy is "aimed at interfering with rights . . . protected against private, as well as official encroachment." *Id.* at 833. In essence, "an alleged conspiracy to infringe [constitutional] rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state." *Id.* at 830; *see also Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009); *Tilton,* 6 F.3d at 687.

Plaintiffs' complaint and memorandum of law does not state that Mr. Lamb and Mr. Poel's conspiracy was motivated by a "racial, or perhaps otherwise class-based, invidiously discriminatory animus." Rather, the complaint and memorandum simply state that the two defendants conspired to end the Plaintiffs' relationship with Mrs. Harrison. (*See, e.g.*, Doc. 2 at 4) ("Defendants Martin H. Poel and Joe M. Lamb each, are being sued together in their individual capacities under Title 42 U.S.C. subsections 1983 and 1985(3) for the "intentional perjury and conspiring" together to end the economic relationship that Plaintiffs had with Mrs. Leona Harrison."). As stated above, section 1985(3) does not reach conspiracies motivated by an economic or commercial bias. Neither does section 1985(3) cover conspiracies that are not aimed at influencing the activities of the state. Therefore, Plaintiffs have failed to establish the existence of federal question jurisdiction under section 1985(3) for the same reason that they have failed to do so under section 1983.

### Claims Under § 1985(2)

Plaintiffs complaint makes only passing references to 42 U.S.C. § 1985(2). (Doc. 1 at 1, 6). However, in their motion to strike, Plaintiffs expand on their claim for damages under section 1985(2). (Doc. 17 at 5-8). Section 1985(2) contains four clauses which create

four distinct causes of action. *Wright v. No Skiter, Inc.*, 774 F.2d 422, 425 (10th Cir.1985).

Only the last two clauses of section 1985(2), clauses C and D, relate to conspiracies in

state court. Clause C, which is the only clause relevant to Plaintiffs' complaint, provides for

a cause of action if "two or more persons conspire for the purpose of impeding, hindering,

obstructing, or defeating, in any manner, the due course of justice in any State or Territory,

with intent to deny to any citizen the equal protection of the laws . . ." 42 U.S.C. § 1985(2).

The Court finds that Plaintiffs have failed to establish the existence of federal question

jurisdiction under section 1985(2).

Much as with section 1985(3), the Supreme Court has held that a cause of action

under clause C requires that the purported conspiracy be class-based. *Griffin,* 403 U.S. at

91 ("The language requiring intent to deprive of equal protection, or equal privileges and

immunities, means that there must be some racial, or perhaps otherwise class-based,

invidiously discriminatory animus behind the conspirators' action."); *see also Steinert v.*

*Winn Group, Inc.*, 440 F.3d 1214, 1225 n. 7 (10th Cir. 2006). Neither the complaint nor the

memorandum of law state that Plaintiffs are a member of a class or that the Defendants'

actions were intended to discriminate against the Plaintiffs based on their inclusion in any

given class. Only in Plaintiffs' motion to strike do they allege that they are a member of a

class - namely pro se litigants. (Doc. 17 at 7 ("[T]he Plaintiffs case at bar does have a class

distinction in that the Plaintiffs are Pro se litigants, and their Procedural and substantial due

process rights was in fact violated for that reason.")). As stated in the previous section, the

protections of § 1985(2) and 1985(3) have been limited to racial or otherwise class-based

discrimination. *Griffin*, 403 U.S. at 102-03. Courts which have considered the issue have

found that pro se litigants are not a protected class under section 1985. *See, e.g., Posr v.*

16

*Court Officer Shield No. 207*, 180 F.3d 409, 419 (2nd Cir. 1999); *Eitel v. Holland*, 787 F.2d 995, 1000 (5th Cir. 1986); *Roden v. Diah*, 2008 WL 5334309 at *9 (W.D. Va., Dec. 19, 2008), *aff'd Roden v. Diah*, 325 F.App'x 253 (4th Cir. 2009); *Silo v. City of Philadelphia*, 593 F.Supp. 870, 874 (E.D. Pa. 1984). Therefore, the complaint does not adequately establish a substantial federal question such that this Court can exercise jurisdiction over the case.

### iii.    Plaintiffs' Motion to Strike

Plaintiffs have moved to "strike the defendant Poel's representation of the defendant Lamb" because they believe that Mr. Poel's representation of Mr. Lamb in the instant suit constitutes a conflict of interest. (Doc. 17 at 1-4, 8). Because the complaint fails to establish that this court has subject matter jurisdiction under either 28 U.S.C. § 1331 or § 1332, the Court may not rule on any other substantive motions in the case. *Cunningham v. BHP Petroleum Great Britan PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005) ("[B]ecause the district court never had jurisdiction over the case, it had no power to rule on any substantive motions or to enter judgment in the case."). Therefore, the Court declines to address the motion to strike.

### iv.    Attorney Fees

Defendants have each requested an award of attorney fees under 42 U.S.C. § 1988, which allows a prevailing party in a § 1983 or § 1985 action to recover reasonable attorney's fees. 42 U.S.C. § 1988 ("The court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."). While the plain text of the rule suggests that any prevailing party may receive attorney fees, the Supreme Court has held that a prevailing defendant should not be routinely awarded fees simply because he or she has won. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1988). This is particularly

true where the losing party is a pro se plaintiff in a § 1983 action. As stated by the Supreme Court, the standards for awarding fees is demanding, and courts should be particularly wary of awarding fees against a pro se litigant. *See Hughes*, 449 U.S. at 14-15 ("An unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims . . . even if the law or the facts are somewhat questionable or unfavorable at the outset of litigation, a party may have an entirely reasonable ground for bringing suit."). The Court should not award attorney fees against a pro se plaintiff unless no reasonable pro se plaintiff could have believed her claims had merit or unless the plaintiff continued to litigate frivolous claims after a reasonable pro se plaintiff would have known her claims were frivolous. *See Crabtree v. Muchmore*, 904 F.2d 1475 (10th Cir. 1990).

In this case, the Court finds that Plaintiffs could have reasonably believed that their claims had merit, and it was not unreasonable for Plaintiffs to pursue their claims. The instant suit appears to be Plaintiffs' first attempt to assert federal constitutional claims and, while the Court is recommending the complaint be dismissed for lack of subject matter jurisdiction, the Court is not prepared to say that Plaintiffs' complaint was frivolous. As noted above, the state action doctrine is "one of the more slippery and troublesome areas of civil rights litigation." *Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1447 (10th Cir. 1995). The Plaintiffs should not be charged for failing to appreciate the nuances of this admittedly confusing area of federal law.

Defendants claim that an award of fees is appropriate since Plaintiffs have already litigated related claims before a New Mexico Magistrate Judge. The Court disagrees.  The mere fact that Plaintiff has pursued this action in both state and federal court does not

18

necessarily support the imposition of fees. *Houston*, 215 F.3d at 1175. Furthermore, while Plaintiffs brought two petitions for restitution in the New Mexico Magistrate Court, it does not appear that they attempted to assert federal civil rights claims before the Magistrate Judge. (*See* Doc. 8-1 at 5-6, 13-17). Therefore, the Court recommends that Defendants' motion for attorney fees pursuant to 42 U.S.C. § 1988 be denied.

### v.   Extension of Time

Plaintiffs filed a *Motion for Extension of Time in Which to Recooperate* [sic] *from having a Stroke Before any Further Proceedings are held Excluding Plaintiffs' Motion to Strike.* (Doc. 19). The motion states that Plaintiff Long suffered a stroke in mid-May and that he is currently beginning speech and physical therapy. (*Id.* at 1). Plaintiffs request "an additional 6 to 8 weeks to recover in order to present their case to a jury of their peers." The Court is sympathetic to Mr. Long's plight. However, because the Court has determined that it lacks jurisdiction to consider Plaintiffs' complaint, Plaintiffs' request for an extension of time to prepare for litigation and trial must be denied.  Should Plaintiffs request additional time to prepare objections to this Court's proposed findings, the Court will certainly oblige them.

### IV.   Recommendation

Because the Plaintiffs' complaint fails to establish the existence of a substantial federal question or that there is a basis for diversity jurisdiction, the Court **RECOMMENDS** that Defendants' *Motion to Dismiss the Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and Memorandum in Support*, (Doc. 8; Doc. 10) be **GRANTED**.

The Court further **RECOMMENDS** that Plaintiffs' *Complaint*, (Doc. 1), be **DISMISSED WITHOUT PREJUDICE**. *See Strozier v. Potter*, 71 F.App'x 802, 803 (10th Cir.

2003) (holding that a  dismissal for lack of subject matter jurisdiction must be without

prejudice).

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES DISTRICT JUDGE